# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SANDRALEE L. LYLES,

                Plaintiff,

v.                                                Case No:  6:11-cv-1585-Orl-36DAB

OSCEOLA COUNTY, ROSELINE C.
CLERGE, GREGORY K. FUTCH, RAUL
S. BANASCO, STACY LEONARD
GAINES, CHARLES E. ADAMS, MARC
GARCIA PIERRE-LOUIS, JANE DOE and
JOHN ROE,

                Defendants.
_____/

## **ORDER**

       This cause comes before the Court upon two Motions to Dismiss: (1) Defendants Roseline C. Clerge and Marc Garcia Pierre-Louis' Amended Motion to Dismiss Plaintiff's Second Amended Complaint, filed on June 27, 2012 ("Clerge and Pierre-Louis Motion to Dismiss") (Doc. 69); and Defendants Osceola County, Gregory K. Futch, Raul S. Banasco, Stacy Leonard Gaines and Charles E. Adams' Motion to Dismiss, filed on February 24, 2012 ("Osceola Motion to Dismiss") (Doc. 50).  Plaintiff Sandralee L. Lyles ("Plaintiff") filed an Amended Consolidated Response to the Motions to Dismiss on July 2, 2012 (Doc. 73).  Upon consideration of the parties' submissions, relevant legal authorities, and for the reasons that follow, the Court will grant in part and deny in part Defendants' Motions to Dismiss.

## I.   BACKGROUND

### A.  Facts[1]

This case arises out of the death of Don E. Saunders, Sr. ("Saunders") on August 4, 2009, while he was serving a sixty day sentence at the Osceola County Jail ("Jail").   *See* Second Amended Complaint ("SAC"), Doc. 44.   Plaintiff, the appointed Personal Representative of Saunders' estate, brings this action alleging deliberate indifference to the medical needs of a prisoner pursuant to 42 U.S.C. § 1983, claiming that the Defendants knowingly denied Saunders, a long term dialysis patient, medical treatment for an infected dialysis access port ("AV graft"), despite having been repeatedly advised by Saunders' medical provider that intervention by a vascular surgeon was needed.  *Id.*, pp. 1-2.

#### 1.  *Relevant parties*

Defendant Osceola County, a subdivision of the State of Florida, operated the Jail through the Osceola County Corrections Department ("OCCD").  *Id.* ¶ 10.  Defendant Roseline C. Clerge ("Clerge") was the Advanced Registered Nurse Practitioner ("ARNP") at OCCD.  *Id.* ¶ 11.  Defendant Gregory K. Futch ("Futch") was the Director of OCCD.  *Id.* ¶ 12.  Defendant Raul S. Banasco ("Banasco") was the Deputy Director of OCCD.  *Id.* ¶ 13.  Defendant Stacy Leonard Gaines ("Gaines") was the Captain of OCCD.  *Id.* ¶ 14.  Defendant Charles E. Adams ("Adams") was the Lieutenant of OCCD.  *Id.* ¶ 15.  Defendant Marc Garcia Pierre-Louis ("Pierre-Louis") was the Health Services Manager of OCCD.[2]  *Id.* ¶ 16.

---

[1] The following statement of facts is derived from Plaintiff's Second Amended Complaint (Doc. 44), the allegations of which the Court must take as true in ruling on the instant Motions to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Food de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

[2] Plaintiff alleges that Defendants Clerge, Futch, Banasco, Gaines, Adams and Pierre-Louis each held these positions at all times relevant to this action.  *See* SAC, ¶¶ 11-16.

## 2.   *Timeline of events*

On July 7, 2009, Saunders was incarcerated at the Jail for sixty days for the traffic misdemeanor of driving with a suspended driver's license.  *Id.* ¶ 17.  At the time of Saunders' incarceration, a medical assessment was made disclosing that he had several medical conditions, including renal failure, anemia, diabetes, and an AV graft which had been implanted in his right leg for treatment of his renal failure.  *Id.* ¶ 18.  The Jail arranged for Saunders to receive hemodialysis treatment at the Central Florida Kidney Center ("CFKC") during his incarceration. *Id.* ¶¶ 19, 21.

Defendant Clerge was the Jail's primary medical provider and had knowledge of Saunders' medical conditions and the care he required.  *Id.* ¶ 20.  On July 31, 2009 at the CFKC, it was noted that Saunders had an infected AV graft.  *Id.* ¶ 22.  On August 2, 2009 at 1:42 p.m., the Jail's medical staff noted that Saunders' AV graft was bleeding and he was transported to the Osceola Regional Medical Center Emergency Room ("Osceola ER").  *Id.* ¶ 24.  The Osceola Regional Medical Center noted that Saunders' AV graft was moderately bleeding, changed his dressing, and discharged him at 2:17 a.m.  *Id.* ¶¶ 25, 26.  Osceola Regional Medical Center's discharge instructions stated that Saunders was to return if there was bleeding or signs of infection.  *Id.* ¶ 27.  In the early morning of August 3, 2009, Saunders was transported to the CFKC, accompanied by a nurse from the Jail.[3]  *Id.* ¶ 28.  The Jail's medical records mention that CFKC instructed Saunders to return if there were signs or symptoms of continued bleeding.  *Id.*

On August 3, 2009, CFKC provided unidentified Jail employees with the address and phone number of the Vascular Access Center of Orlando, and advised that the Jail make an appointment regarding Saunders' "access pain and swelling as soon as possible."  *Id.* ¶¶ 29, 30.

---

[3] The SAC does not identify the nurse who accompanied Saunders to the CFKC on August 3, 2009.  *See* SAC, Doc. 44.

On August 3, 2009, the CFKC called the Jail twice to advise that Saunders see a vascular physician.  *Id.*  ¶¶ 30, 31.  Plaintiff alleges that CFKC informed Jail employees that Saunders required care by a vascular physician on at least three ocassions, but he did not receive such care.  *Id.* ¶ 32.  On August 3, 2009, at 6:42 p.m., Saunders was brought to the Jail's medical bay with extensive bleeding and was transported to the Osceola ER.  *Id.* ¶ 33.  The emergency medical services team ("EMS") noted that when they arrived, Jail staff was holding direct pressure on Saunders' right thigh, there was blood on his clothes and extremities, and approximately 250-500 milliliters on the ground.  *Id.* ¶ 34.  Saunders returned from the Osceola ER to the Jail at 1:15 a.m. on August 4, 2009, complaining of pain and tenderness: he stayed in the medical bay for observation and to be seen by Clerge later that day.  *Id.* ¶ 36.

Plaintiff alleges that although Jail staff did not arrange for Saunders' prompt treatment by a vascular surgeon, authorization requests to pay for a vascular surgeon were transmitted through the Jail's "chain of command".  *Id.*  ¶¶ 39, 40.  On August 4, 2009 at 9:30 a.m., Defendant Clerge noted that Saunders was bleeding from the AV graft, and had redness and swelling.  *Id.* ¶¶ 42, 43.  At 11:57 a.m., Jail employees contacted EMS.  *Id.* ¶ 45. At 12:05 p.m., EMS found Saunders on the floor with at least one liter of blood around him, and a tourniquet was being applied to his leg to control the bleeding.  *Id.* ¶ 46.  Saunders stopped breathing, went into cardiac arrest, and was transported to the Osceola ER, where he was declared dead at 2:43 p.m.  *Id.* ¶¶ 46, 47.  The Osceola County medical examiner found that Saunders' cause of death was hemorrhage from an infected AV graft of the right thigh.  *Id.* ¶ 48.

### B.  Procedural History

On August 4, 2011, Plaintiff filed an action in the Circuit Court of the Ninth Judicial Circuit, in and for Osceola County.  Doc. 2.  Defendants Clerge and Pierre-Louis removed the

case pursuant to 28 U.S.C. § 1441, § 1446, and §1331.  Doc. 1.  Following Defendants Osceola County, Futch, Banasco, Gaines and Adams' first Motions to Dismiss (Doc. 10), Plaintiff sought and was granted leave to amend her Complaint.  Doc. 28.  On December 20, 2011, Plaintiff filed a First Amended Complaint ("FAC").  Doc. 32.  On December 30, 2011, Defendants Osceola County, Futch, Banasco, Gaines and Adams filed a Motion to Dismiss the FAC.  Doc. 34. Subsequently, Defendants Clerge and Pierre-Louis filed a Motion to Dismiss the FAC.  Doc. 35. The Court granted Plaintiff's request to amend the FAC, denying Defendants' Motions to Dismiss as moot.  Docs. 43, 45.

On January 31, 2012, Plaintiff filed the eight-count SAC.  Doc. 44.  Counts I-IV allege negligence against Defendant Osceola County under Florida's Wrongful Death Statute § 768.28 on behalf of the decedent, Saunders, and each of his three children.  *Id.*; Doc. 73, pp. 3-4.  Count V alleges deliberate indifference to the right to be free from cruel and unusual punishment pursuant to 42 U.S.C. § 1983 against Defendants Clerge, Futch, Banasco, Gaines, Adams and Pierre-Louis.  SAC, p. 15.  Count VI alleges deliberate indifference to the right to be free from cruel and unusual punishment pursuant to 42 U.S.C. § 1983 against Defendant Osceola County. *Id.*, p. 20.  Count VII alleges medical malpractice against Defendant Osceola County as Clerge's employer and Clerge individually.  *Id.*, ¶¶ 118-133.  Count VIII alleges medical malpractice against Defendant Osceola County as Pierre-Louis' employer and Pierre-Louis individually.  *Id.*, ¶¶ 134-145.

## II.   **STANDARD**

To survive a motion to dismiss, a pleading must include a "'short and plain statement showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements

of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555 (2007)).  Mere naked assertions, too, are not sufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* at 1950.  Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id.*  For the purposes of a motion to dismiss, the court must view the allegations in the light most favorable to the plaintiff. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994).

Upon consideration of a Motion to Dismiss based upon Federal Rule of Civil Procedure 12(b)(6), a district court must "limit[ ] its consideration to the pleadings and exhibits attached thereto". *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Lexis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623 (11th Cir. 2008).  If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).

## III.   ANALYSIS

### A.  The capacity in which Defendants are sued is evident in Counts V and VI

As a threshold matter, the Defendants argue that it is unclear whether the named Defendants are being sued in their individual or official capacities. *See* Doc. 50, pp. 4-7; Doc. 69, pp. 6-7.  A suit against a defendant in his or her official capacity as an employee of a

6

governmental entity is duplicative of a suit against that governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Accordingly, a claim against the Individual Defendants in their official capacity would be duplicative of the same claim alleged against Defendant Osceola County. By contrast, defendant employees of a governmental entity sued in their individual capacities may assert the defense of qualified immunity, which can be overcome with proper pleadings and should be resolved as early as practicable in an action. *Keating v. City of Miami*, 598 F.3d 753, 762-63 (11th Cir. 2010).

The Court finds that the SAC sufficiently indicates that in Count V, individual defendants Clerge, Fitch, Banasco, Gaines, Adams and Pierre-Louis (the "Individual Defendants") are being sued in their individual capacities pursuant to 42 U.S.C. § 1983 for deliberate indifference to the right to be free from cruel and unusual punishment. SAC, p. 15. In Count VI, Plaintiff sues Defendant Osceola County, also pursuant to 42 U.S.C. § 1983. *Id.*, p. 20.

### B. Plaintiff's negligence claims are duplicative of her medical negligence claims

In Counts I through IV, Plaintiff attempts to allege non-medical negligence under Florida's Wrongful Death Act, seeking relief against Defendant Osceola County for its "fail[ure] to provide timely access to prescribed medical care and fail[ure] to provide timely access to emergency medical services and treatment to Saunders." SAC, ¶¶ 52, 57, 62, 67; Fla. Stat. § 768.28. Defendants argue that because Plaintiff separately brings medical malpractice claims against Defendant Osceola County based upon the actions of Clerge and Pierre-Louis, both of whom Plaintiff alleges "failed to intervene or provide prompt reasonable medical care for Saunders", these negligence claims are redundant. SAC, Count VII, ¶¶ 118-133; Count VIII, ¶¶ 134-148; ¶¶124-139; Doc. 50, pp. 2, 7-10. Defendant Osceola County argues that although Plaintiff cites the Florida Wrongful Death Act, the basis for these claims is the Defendants'

alleged failure to provide Saunders with the medical attention that he needed, and therefore they are duplicative of the medical malpractice claims against Defendant Osceola County.  Doc  50, p. 7; Fla. Stat. §§ 768.16.  Plaintiff contends that she can maintain an action for ordinary negligence and medical negligence.  The Court agrees that a plaintiff can maintain an action for ordinary negligence and medical negligence under certain circumstances, which have not been alleged here.

Under Florida law, the elements required to state a claim of negligence are: (1) duty; (2) breach of duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage.  *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).  Second, under Florida law, medical negligence is "a claim arising out of the rendering of, or the failure to render, medical care or services." [4]  Fla. Stat. § 766.106(1); *Tenet South Florida Health Systems v. Jackson*, 991 So. 2d 396, 399 (Fla. 3rd DCA 2008).  "In any action for recovery of damages based on the death ... of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider ... the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider."  *Id.*  Thus, under Florida law, a claim for medical negligence is any claim arising out of the rendering of or failure to render medical care or services: a plaintiff is barred from asserting an ordinary negligence claim if she relies upon the medical negligence standard of care.  *Christie v. Lee County Sheriff's Office*, 2011 WL 4501953, *4-5 (M.D. Fla. 2001) (dismissing plaintiff's separate claim for negligence which alleged conduct constituting the

---

[4] Additionally, Florida law requires that before filing any claim for wrongful death arising from medical malpractice, the claimant must comply with specific procedural requirements, including sending defendants a notice of intent to sue, along with a corroborating opinion by a medical expert. *Johnson v. McNeil*, 278 Fe.d App. 866, 871 (11th Cir. 2008); Fla. Stat. § 766.203(2).

rendering of, or the failure to render, medical care or services); *c.f. Tenet St. Mary's Inc. v. Serratore*, 869 So.2d 729, 730-31 (Fla. 4th DCA 2004) (plaintiff's claim for simple negligence arising out of defendant medical center's employee negligently kicking plaintiff's foot was not a claim for medical negligence because it did not arise out of receiving medical care or require plaintiff to prove that employee deviated from an accepted standard of medical care).  The inquiry is whether the action arises out of any medical diagnosis, treatment, or care or failure to diagnose and treat,

Third, Florida's Wrongful Death Act creates a cause of action for a wrongful death caused by another's negligence.  Fla. Stat. §§ 768.16-768.28; *Vaughn v. City of Orlando*, 2008 WL 3540434, *5 (M.D. Fla. 2008).  The Wrongful Death Act permits the personal representative of the decedent to bring one action for the benefit of the estate and the survivors.  Fla. Stat. § 768.20; *Estate of McCall v. U.S.*, 663 F. Supp. 2d 1276, 1303 (N.D. Fla. 2009).  Thus, "one occurrence of wrongful death due to medical negligence gives rise to one cause of action for the benefit of the estate and the survivors."  *Estate of McCall*, 663 F. Supp.2d at 1303; *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007)

In support of her negligence claims in Counts I through IV, Plaintiff alleges that Defendant Osceola County's employees failed to provide Saunders with access to a vascular physician in a timely manner, as suggested by the CFKC, and failed to provide timely access to emergency medical services.  *See* SAC.[5]  This conduct "certainly constitutes claims arising out of the rendering of, or the failure to render medical care or services."  *Christie*, 2011 WL

---

[5] *See* SAC ¶¶  52, 57, 62, 67 ("Osceola County failed to provide timely access to prescribed medical care and failed to provide timely access to emergency medical services and treatment to Saunders"); ¶¶ 53, 58, 63, 68 ("As a result of Osceola County's breach of its duties, Saunders suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medial nursing care and treatment, and eventually a painful, agonizing death.").

4501953, *5. The facts alleged here are distinguishable from those claims of negligent custodial care brought against a sheriff or nonmedical provider. *See Darling v. Palm Beach County Sheriff*, 2 So.3d 368 (Fla. 4th DCA 2008) (medical negligence claim and ordinary negligence claim permitted where ordinary negligence pertained to the performance of the sheriff's custodial care). Accordingly, the Court finds that to the extent Counts I through IV allege negligence arising out of the failure to render or the delay in rendering medical services they are duplicative of Counts VII and VIII, which allege medical negligence against Defendant Osceola County. Moreover, even if Plaintiff's ordinary negligence claims are analyzed, such as for the purpose of damages, under Florida's Wrongful Death Statute, they are not properly brought as separate causes of action for the estate and each survivor. One cause of action is allowed. *Estate of McCall*, 663 F. Supp.2d at 1303; *Johnson v. McNeil*, 278 Fed. Appx. 866, 869 (11th Cir. 2008). Therefore, Counts I through IV are dismissed.

### C.  Plaintiff has sufficiently alleged a § 1983 claim of deliberate indifference against the Individual Defendants but not against Defendant Osceola County

A plaintiff suing pursuant to 42 U.S.C. § 1983 must demonstrate that a defendant's act or omission deprived him of a right secured under the Constitution or federal law and that said deprivation occurred under color of state law.[6] *Arlington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1988). Plaintiff's § 1983 claims are based upon Saunders' rights under the Eighth Amendment, which governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary

---

[6] Deprivation "under color of law" arises from each of the individual defendants having official employment at the jail or being employed at the county and performing traditional functions in those official positions or employment. *Britt v. Prison Health Services*, 2007 WL 2126294, *3, n. 2 (M.D. Fla. 2007).

and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Instead, prison officials must be deliberately indifferent to the serious medical needs of a prisoner. *Id.*, p. 104; *Johnson,* 278 Fed. Appx. at 870.

Accordingly, to establish deliberate indifference a plaintiff must demonstrate both an objectively serious medical need and that prison personnel were deliberately indifferent to that need. *Johnson v. McNeil*, 278 Fed. Appx. 866, 870 (11th Cir. 2008). To establish liability for deliberate indifference, a plaintiff must prove that the defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregard for that risk; and (3) displayed conduct beyond gross negligence. *R.W. v. Armor Correctional Health Services, Inc.*, 830 F. Supp. 2d 1295 (M.D. Fla. 2011); *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105-06 (1976); *Armor Correctional Health Services*, 830 F. Supp. 2d at 1302 (dismissing claims of deliberate indifference where there was no indication that plaintiff sustained serious physical injury as a result of the alleged delayed treatment).

### 1. *Plaintiff has sufficiently alleged constitutional claims against the Individual Defendants*

The Court finds that Plaintiff has adequately alleged the Individual Defendants' deliberate indifference to Saunders' serious medical needs. First, it is evident that Saunders' bleeding AV graft presented a serious medical need. The Eleventh Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Taylor v. Adams*, 221

F.3d 1257 (11th Cir. 2000)).  At the time of Saunders' incarceration, a medical assessment disclosed that he had several medical conditions, including renal failure, anemia, diabetes, and an AV graft which had been implanted in his right leg.  SAC, ¶ 18.  Indeed, the Jail arranged for Saunders to receive hemodialysis treatment at CFKC during his incarceration.  *Id.* ¶¶ 19, 21.  In addition to Defendants' knowledge of Saunders' preexisting serious medical needs, Saunders was brought to the Jail medical bay with extensive bleeding from his AV graft on August 3, 2009, and subsequently transported to the Osceola ER.  *Id.* ¶ 33.  Therefore, the Jail staff had knowledge of Saunders' serious conditions requiring medical treatment, and they became so severe during his incarceration that even a lay person would recognize the necessity for a doctor's intervention.  *See Farrow*, 320 F.3d at 1243.  Accordingly, Plaintiff has alleged serious medical need.  *Johnson*, 278 Fed. Appx. at 870.

Second, Plaintiff has alleged sufficient factual allegations, which, if true, state a claim for the Individual Defendants' deliberate indifference to Saunders' serious medical needs by failing to provide timely access to the recommended vascular physician for treatment of his infected AV graft.  In the Eleventh Circuit, deliberate indifference encompasses subjective knowledge of a risk of serious harm and disregard of that risk by conduct that is more than mere negligence.  *Farrow*, 320 F.3d at 1245 (citing *McElligott*, 183 F.3d at 1255).  Indeed, an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but fails or refuses to obtain medical treatment for the inmate.[7]  *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997); *see Hilll v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994) ("Cases stating a constitutional claim for immediate or

---

[7] In fact, even when a prison official eventually provides medical care, the official's act of delaying the care for a serious medical need can constitute an act of deliberate indifference. *Ryals v. Rambosk*, 2010 WL 3341868 (M.D. Fla. 2010).

emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994) (sheriff was not entitled to qualified immunity where he intentionally delayed treatment that he knew had been prescribed for inmate's serious medical need).

Here, Plaintiff alleges that although CFKC informed Jail employees at least three times that Saunders required care by a vascular physician, he did not receive such care.  SAC, ¶ 32.  Specifically, Plaintiff alleges that although authorization requests to pay for a vascular surgeon were transmitted through the Jail's "chain of command," Saunders did not receive such treatment.  *Id.*  ¶¶ 39, 40.  Plaintiff has sufficiently alleged that Defendants Clerge and Pierre-Louis, the ARNP and Health Services Managers of OCCD, had knowledge of Saunders' existing serious medical conditions and the recommendations that he see a vascular physician.  SAC ¶¶ 11, 16, 43, 70-93.  Further, Plaintiff alleges that to the best of her knowledge, Individual Defendants Futch, Banasco, Gaines and Adams were part of the OCCD "chain of command", which had knowledge of Saunders' serious medical need for a vascular specialist, and delayed or denied his access to the appropriate medical care.[8]  *Id.* ¶¶ 12-15, 70-93.  Also, Plaintiff alleges that the day before Saunders' death he lost nearly a pint of blood and was brought to the Osceola ER.  SAC, ¶¶ 33, 34.  The Osceola ER provided instructions that should Saunders bleed from his AV graft again, he should return to the Osceola ER.  *Id.* ¶ 27.  Accordingly, Plaintiff's allegation

---

[8] The SAC alleges that Defendants Clerge, Adams, Gaines, Pierre-Louis, Banasco and Futch know about Saunders' medical history and conditions, knew that it was a medical necessity for Saunders to be treated by a vascular surgeon and to receive other emergency medical treatment for his infection, knew that Saunders risked serious further injury and death should he not receive emergency medical treatment including treatment by a vascular specialist, "deliberately disregarded and was indifferent to the grave medical condition of Saunders and the substantial risk of serious injury and death."  SAC, ¶¶ 89(a)-(f).

that the Jail's employees waited from 9:30 a.m. to 11:57 a.m. on August 4, 2009, while Saunders

bled, before calling emergency services, is sufficient to plead deliberate indifference with respect

to delay in emergency treatment.  SAC, ¶¶ 42-45, 46-47; *see Dekalb Regional Youth Detention*

*Center*, 40 F.3d at 1187 (either a medical provider or a lay person may be held liable for

deliberate indifference where it is apparent that delay would detrimentally exacerbate the

medical problem or when the delay results in permanent disability or loss).

The Individual Defendants argue that contrary to Plaintiff's characterization, the SAC

demonstrates that Saunders received near constant medical treatment during his incarceration.

Doc. 69, pp. 11-12.  However, as the Individual Defendants themselves note, the essence of the

Plaintiff's section 1983 claims involves the Individual Defendants' failure to timely provide

Saunders with access to a vascular professional in order to treat his infected AV graft, despite

repeated recommendations to do so.  *Id.*; SAC, ¶¶ 70-93.  Moreover, the Court disagrees with the

Individual Defendants' conclusion, given the factual allegations, that "no reasonable official

would have understood that an alleged delay in sending Saunders to a vascular specialist would

have constituted a violation of Saunders' Eighth Amendment right to be free from cruel and

unusual punishment." [9]  Doc. 69, p. 11.

---

[9] While Individual Defendants cite cases wherein the Eleventh Circuit has found no
constitutional violation as long as the medical care provided to an inmate is "minimally
adequate", the Court notes that in more recent decisions, the Eleventh Circuit has held that
delays in access to care for an inmate's known serious medical condition can constitute
deliberate indifference.  Doc. 69, p. 13 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir.
1991); *c.f. Lancaster,* 116 F.3d at 1425 ("an official acts with deliberate indifference when he
intentionally delays providing an inmate with access to medical treatment, knowing that the
inmate has a life-threatening condition or an urgent medical condition that would be exacerbated
by delay."); *Ryals v. Rambosk*, 2010 WL 3341868, *4 (same).

### 2.   *The Individual Defendants are not entitled to qualified immunity at this stage, given the allegations in the SAC*

Defendants Clerge and Pierre-Louis assert that Plaintiff has failed to plead facts sufficient to overcome the defense of qualified immunity, and therefore that Count V should be dismissed.[10]  Doc. 69, p. 10.  Plaintiff maintains that she has alleged sufficient facts from which the Court may determine that the Individual Defendants' actions violated Saunders' clearly established constitutional rights.  Doc. 73, p. 11.

With regard to § 1983 claims, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To establish qualified immunity, the government official must first show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts.  *See Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1285 (11th Cir. 2009).  Specifically, a defendant must show that those actions were: "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  *Gray ex. rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).  There appears to be no dispute that at all relevant times, Individual Defendants Clerge, Pierre-Louis, Futch, Banasco, Gaines, and Adams were acting within the course and scope of their employment with OCCD and engaging in discretionary functions.  *See* SAC, ¶¶ 11-16; Doc. 69,

---

[10] Individual Defendants Futch, Banasco, Gaines, and Adams argue that if they are named in their individual capacities, "they may assert  qualified immunity from Plaintiff's claims" and argue that the SAC does not sufficiently identify in what capacity they are being sued.  Doc. 50, pp. 6-7.  Having determined that the SAC sufficiently indicates that the Individual Defendants are being sued pursuant to Section 1983 in their individual capacities, the Court examines the argument of qualified immunity.

p. 11 ("The determination of whether referral to a vascular surgeon and the timing of such referral was a discretionary function").

Second, the burden then shifts to Plaintiff to show that qualified immunity is inappropriate by demonstrating that the defendant violated a constitutional right, and that this right was clearly established at the time of the violation. *Gray ex. rel. Alexander v*, 458 F.3d at 1303; *Sacier v. Katz*, 533 U.S. 194, 201 (2001).  "Clearly established" means that it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Sacier*, 533 U.S. at 201.  At the times relevant to this action, the case law was established that an official acts with deliberate indifference when he intentionally delays providing and inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that could be exacerbated by delay. *Dekalb Regional Youth Detention Center*, 40 F.3d at 1187; *Harris*, 21 F.3d at 394.

Therefore, in order to assess the Individual Defendants' immunity in this case, the Court must determine whether, taking all of Plaintiff's allegations as true, the SAC alleges the violation of a clearly established constitutional right. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).  As discussed, Plaintiff has sufficiently alleged that the Individual Defendants knew or should have known about Saunders' serious medical needs.  Second, the Individual Defendants' failure to provide Saunders with timely access to a vascular physician despite several recommendations by CFKC to do so, sufficiently establishes disregard for risk to Saunders that constituted more than gross negligence. *See Dekalb Regional Youth Detention Center*, 40 F.3d at 1187.  Finally, Plaintiff alleges that this deliberate indifference caused Saunders' death.  As such, the Court finds sufficient facts have been alleged to establish the Individual Defendants

violated Decedent's clearly established constitutional right.   Accordingly, at this stage of the litigation, dismissal on qualified immunity grounds is not warranted.

### 3. *Plaintiff has not alleged a constitutional claim against Defendant Osceola County*

The Court finds that Plaintiff has not adequately alleged Defendant Osceola County's deliberate indifference to Saunders' serious medical needs.   Indeed, as Defendant Osceola County argues, a municipality cannot be held liable under Section 1983 solely for its employees' tortious actions, on a *respondeat superior* theory.   *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978); *Adcock v. Baca*, 157 Fed. Appx. 118, 120 (11th Cir. 2005); Doc. 50, p. 11.   To establish liability pursuant to Section 1983, a plaintiff must plead that a municipality had a "policy or custom" of deliberate indifference that contributed to or caused the violation of the plaintiff's rights.   *Monell*, 436 U.S. at 694.   Thus liability only attaches when a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*, at 690-91.

In the Eleventh Circuit, with few exceptions, a "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality" participating in the unconstitutional conduct.   *Craig v. Floyd County, Georgia*, 643 F. 3d 1306, 1311 (11th Cir. 2011) (plaintiff's claim that Floyd County had a practice of not referring detainees to physicians, supported only by evidence that during his own incarceration he was not referred to a physician, was insufficient to demonstrate a practice of deliberate indifference); *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003) (plaintiff can establish a county's policy either with evidence of an official county policy or an unofficial custom or practice that the county shows through repeated acts of a

policymaker); (*Rykard v. City of Dothan*, 2011 WL 6813001, *5 (M.D. Ala. 2011) (jail's failure to provide inmate with medical attention over a five-day period resulting in an obvious infection requiring surgery and therapy did not establish practice of denying appropriate medical treatment).

In Count VI, Plaintiff states that the Individual Defendants Clerge, Futch, Banasco, Gaines and Adams "were following the policy, custom or practice of deliberate indifference to the medical needs of Osceola County's prisoners." SAC, ¶ 94. Although Plaintiff concludes that the "deprivation of Saunders' medical care was pervasive and establishes that these practices were widespread", she has neither provided specific information regarding any other instances of deprivation, nor identified a specific policy or custom. *Id.* ¶ 101. Plaintiff argues that she has alleged the failure to treat a vascular infection for five days commencing on July 31, 2009, the repeated failure to bring Saunders to a vascular surgeon, and failure to provide timely emergency care for two "catastrophic bleeds". Doc. 73, pp. 23-25; SAC, ¶¶ 107-08. Nevertheless, the Court agrees with Defendant Osceola County that Plaintiff's attempt to frame Saunders' death, a single occurrence, as evidence of an existing policy or custom, is unpersuasive. Doc. 50, p. 12. As such, the Court finds that although Plaintiff has pled facts that, taken as true, allege a claim for deliberate indifference against the Individual Defendants, she has not alleged a pattern or custom of deliberate indifference to medical needs at the Jail. *Craig,* 643 F. 3d at 1311 (11th Cir. 2011); *Grech,* 335 F.3d at 1330 n. 6 (11th Cir. 2003); *Rykard v. City of Dothan*, 2011 WL 6813001, *5.

The Court notes that at paragraphs 91, 92, 115 and 116 of the SAC, Plaintiff alleges that the Defendants violated the civil rights of the decedent's three children. Under these facts, no claim may be asserted for a violation of the rights of the decedent's three children. *See Torres v. Orange Cty, Fla.*, 2000 WL 35527256, *1 (M.D. Fla. May 16, 2000). Accordingly, Count VI

alleging Defendant Osceola County's deliberate indifference to prisoners' needs in violation of 42 U.S.C. § 1983 will be dismissed.

### D.  Plaintiff's Medical Malpractice Claims are sufficient only against Defendant Osceola County

Pursuant to 28 U.S.C. § 1367, Plaintiff also brings pendent state law claims of medical malpractice against Defendant Osceola County for the actions of Defendants Clerge and Pierre-Louis, and in the alternative, against Defendants Clerge and Pierre-Louis individually.  SAC, ¶¶ 118-144; Fla. Stat. § 766.106.  Pursuant to Florida Law, an employee of a municipality may not be held personally liable for medical malpractice unless their actions occurred outside the scope of their employment or were performed in bad faith, with malicious purpose or with wanton and willful disregard for human rights.  Fl. Stat. § 768.28(9)(a); *Bloom v. Miami-Dade* County, 816 F. Supp. 2d 1265 (S.D. Fla. 2011); *Nelson v. Prison Health Services, Inc.*, 991 F. Supp. 1452, 1465 (M.D. Fla. 1994).

Plaintiff argues that she has pled sufficient facts to establish that Defendants Clerge and Pierre-Louis' behavior constituted willful or wonton conduct such that each may be liable for malpractice in their individual capacities.  Doc. 73, pp. 28-33.[11]  Specifically, Plaintiff alleges that "Defendant Clerge failed to intervene or provide prompt reasonable medical care for Saunders" and that this failure to provide proscribed medical care and prompt emergency services was willful and wanton.  SAC, ¶ 124; Doc. 73, p. 32.  With respect to Defendant Pierre-

---

[11] Plaintiff acknowledges that she has pled in the alternative, as is permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2).  However, in order to promote clarity and avoid confusion of the jury, Plaintiff must plead alternative claims in separate counts of the complaint. *See* Fed. R. Civ. P. 10(b)..  Plaintiff states that"[s]hould it be determined that the actions were mere negligence, and not willful and wanton, then the action against Osceola County becomes the exclusive remedy."  Doc. 73, p. 29.  Because the Court finds that Plaintiff has not alleged sufficient facts supporting claims for individual liability that Defendants Clerge or Pierre-Louis acted in "a manner exhibiting wanton and willful disregard of [Saunders'] human rights", Plaintiff's medical malpractice claim is appropriate only against Defendant Osceola County.

Louis, Plaintiff alleges that as a registered nurse serving as the administrator of health services at the Jail, his failure to intervene despite Saunders' worsening physical condition constituted willful and wonton conduct. SAC, ¶¶ 17-18, 20-36, 42-48, 136-138, 142. Defendants Clerge and Pierre-Louis maintain that Plaintiff's general allegation that Clerge's actions may constitute "willful and wanton misconduct" are unsupported by facts, and assert that there is no basis to support a finding that Clerge or Pierre-Louis acted outside the scope of their employment, in bad faith, with malice, or with willful disregard of Saunders' medical needs. Doc. 69, pp. 18-20; *Bloom*, 816 F. Supp. 2d at 1273 (plaintiffs had not sufficiently pled that defendant's actions were "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" and thus defendant could not be individually liable).

The Court finds that Plaintiff has not alleged sufficient facts tending to show that either Defendant Clerge or Pierre-Louis possessed the scienter required to hold them individually liable for medical malpractice pursuant to Florida Statute § 768.28(9)(a). Accordingly, to the extent Counts VII and VIII attempt to assert claims of individual liability against Defendants Clerge and Pierre-Louis for medical negligence they are dismissed.

In Florida, a claim for medical negligence is a claim "arising out of the rendering of or the failure to render medical care or services."[12] Fla. Stat. § 766.106(1)(a); *J.B. v. Sacred Heart Hospital of Pensacola*, 635 So. 2d 945, 948-49 (Fla. 1994). In a medical negligence action where it is alleged that a death resulted from the negligence of health care provider, the claimant must prove "by a greater weight of evidence that the alleged action of the health care provider

---

[12] The Florida Supreme Court has determined that "chapter 766's notice and presuit screening requirements apply to claims that arise out of the rendering of, or the failure to render, medical care or services." *J.B. v. Sacred Heart Hospital of Pensacola*, 635 So. 2d 945, 949 (Fla. 1994). Here, Plaintiff was granted leave to filed the SAC and add Counts VII and VIII after it complied with the pre-suit investigation for medical malpractice claims. *See* Docs. 42, 43; Fla. Stat. § 766.106.

represented a breach of the prevailing professional standard of care for that health care provider. *Tenet South Florida Health Systems v. Jackson,* 991 So.2d 396, 399 (Fla. 3rd DCA 2008). Defendant Osceola County acknowledges that medical providers in a jail setting are not immune from medical negligence.   Doc. 50, pp. 9-10; citing *Smith ex rel Ashley v. Brevard County, Florida*, 2006 WL 2355583, *6 (M.D. Fla. 2006) ("[T]he alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill"); *Gullo v. Prison Health Services, Inc.*, 2007 WL 3340396 (M.D. Fla. 2007) (inmate's claim that he was denied medication from prison health care providers is subject to medical malpractice statute requirements).   Therefore, Plaintiff's Counts VII and VIII which assert medical negligence are properly pled against Defendant Osceola County only, for the alleged negligent acts of Defendant Clerge and Pierre-Louis.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Defendants Clerge and Pierre-Louis' Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 69) is **GRANTED in part and DENIED in part.**

2. Defendants Osceola County, Futch, Banasco, Gaines and Adams' Motion to Dismiss, (Doc. 50) is **GRANTED in part and DENIED in part**.

3. Plaintiff's Second Amended Complaint (Doc. 44) is dismissed as follows:

   a. Counts I, II, III and IV alleging ordinary negligence against Defendant Osceola County under Florida's Wrongful Death Statute § 768.28 on behalf of the decedent and each of his three children are dismissed. Counts I, II, and III are dismissed with prejudice.

21

    b.   Count VI alleging deliberate indifference to the right to be free from cruel and unusual punishment pursuant to 42 U.S.C. § 1983 against Defendant Osceola County is dismissed.

    c.   Counts VII and VIII are dismissed to the extent Plaintiff asserts claims against Defendants Clerge and Pierre-Louis in their individual capacities.

    d.   In all other respects, the Motions to Dismiss are **DENIED.**

    e.   Although this is the Plaintiff's Second Amended Complaint, this is the first time the Court has ordered the dismissal of claims.  Given the nature of the claims asserted, the Court will give Plaintiff one final opportunity to amend her complaint.  Plaintiff is granted leave to file a Third Amended Complaint within **fourteen (14)** days of the date of this order, which cures the deficiencies noted in this Order.  In so doing, Plaintiff is reminded of the requirement that factual contentions have evidentiary support and that claims be warranted by existing law or by a nonfrivolous argument for modifying the law.  *See* Rule 11, Fed. R. Civ. P.

**DONE** and **ORDERED** in Orlando, Florida on September 13, 2012.

Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD